IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEBRASKA

EDDY SEGURA,                        )
                                    )
            Petitioner,             )          8:12CV60
                                    )
       v.                           )
                                    )
ROBERT HOUSTON,                     )       MEMORANDUM OPINION
                                    )
            Respondent.             )
_____)


     This matter is before the Court on Eddy Segura's ("Petitioner" or "Segura") Petition for Writ of Habeas Corpus ("Petition") (Filing No. 1).  Liberally construing the allegations of Segura's Petition, Segura argues he is entitled to a writ of habeas corpus based on the following claims:

> Claim One:     Petitioner was convicted in violation of his right to due process of law because the trial court (1) did not order that he undergo a full psychiatric evaluation; (2) did not recuse itself despite "multiple conflicts of interest"; and (3) coerced him into accepting a plea agreement.

> Claim Two:     Petitioner received the ineffective assistance of counsel in violation of the Sixth Amendment because his trial counsel (1) failed to "present to the court a written sanity evaluation"; (2) failed to inform him of his right to challenge the psychiatric report; (3) coerced him into accepting a plea agreement; and (4) directed him to enter into a plea agreement before the defense had gained access to discovery materials.

Claim Three:   Petitioner was convicted in violation of his right to due process of law because the prosecution allowed Petitioner to enter into a plea agreement before giving him access to discovery materials.

(Filing Nos. 1 and 6.)  For the reasons set forth below, the Court will dismiss Segura's Petition with prejudice.

## I.  BACKGROUND

### A.  Conviction and Direct Appeal

On May 12, 2005, the State filed an information in the Scotts Bluff County District Court charging Segura with attempted first degree murder, first degree assault, use of a deadly weapon to commit a felony, attempted second degree murder, and use of a firearm to commit a felony (Filing No. 8-15 at CM/ECF p. 34).  On October 21, 2005, Segura pled no contest to attempted first degree murder, and the State dismissed the remaining charges (*Id.* at CM/ECF p. 61).  Thereafter, the Court sentenced Segura to a period of not less than 24 years, nor more than 40 years (*Id.* at CM/ECF p. 1).

Segura timely appealed his conviction and sentence to the Nebraska Court of Appeals, which summarily affirmed the decision of the state district court (Filing No. 8-1 at CM/ECF p. 2).  Thereafter, Segura sought relief from the Nebraska Supreme Court in a petition for further review, which the Nebraska Supreme Court denied.  (*Id.*)  In Segura's briefs to the Nebraska Court of Appeals and the Nebraska Supreme Court, he argued (1) he

-2-

received an excessive sentence, and (2) "the sentencing court abused its discretion by failing to order a [psychiatric] evaluation under Neb. Rev. Stat. § 29-2261(5)." (Filing No. 8-6 at CM/ECF p. 5; Filing No. 8-8 at CM/ECF p. 1.) Segura was represented by the same attorney throughout the state district court proceedings, and on direct appeal.

**B.   Post-Conviction Motion and Appeals**

Segura filed a motion for post-conviction relief ("post-conviction motion") in the Scotts Bluff County District Court on November 16, 2007 (Filing No. 8-16 at CM/ECF p. 49). In Segura's post-conviction motion, he alleged three arguments relating to the ineffective assistance of his trial counsel: (1) he coerced Segura to enter into a plea agreement; (2) he should have challenged the doctor's finding that Segura was competent to stand trial; and (3) he should have pursued an insanity defense (*Id.* at CM/ECF pp. 49-78). Segura also argued the sentencing court abused its discretion when it did not allow Segura's family to speak at his sentencing (*Id.* at CM/ECF pp. 49-78).

The state district court found that Segura was entitled to an evidentiary hearing on the limited issue of whether his trial counsel was ineffective for failing to pursue the insanity defense (*Id.* at CM/ECF p. 87). The court denied relief as to all of Segura's other arguments. (*Id.*) On May 23, 2008, Segura filed an interlocutory appeal that challenged the court's

-3-

limitation of the issues to be considered at the evidentiary hearing (Filing No. 8-16 at CM/ECF p. 1).  The Nebraska Court of Appeals summarily affirmed the state district court's decision, and the Nebraska Supreme Court denied a petition for further review (Filing No. 8-2 at CM/ECF p. 2).

The state district court held the evidentiary hearing on July 29, 2010, and denied post-conviction relief on October 5, 2010 (Filing No. 8-18 at CM/ECF p. 112).  Segura timely appealed the court's decision to the Nebraska Court of Appeals, which denied relief by written opinion in *State v. Segura*, No. A-10-1085, 2011 WL 4635169 (Neb. Ct. App. Sept. 27, 2011). Thereafter, Segura sought relief from the Nebraska Supreme Court in a petition for further review, which the Nebraska Supreme Court denied (Filing No. 8-4 at CM/ECF p. 2).

**C.   Petition for Writ of Habeas Corpus**

Segura timely filed his Petition in this Court on February 9, 2012 (Filing No. 1).  In response to Segura's Petition, Respondent filed an answer, a brief, and the relevant state court records (Filing Nos. 8, 11, and 12).  Segura filed two briefs in support of his Petition (Filing Nos. 15 and 16).

## II.   PROCEDURALLY-DEFAULTED CLAIMS

**A.   Standards for Procedural Default**

As set forth in 28 U.S.C. § 2254(b)(1):

> (b)(1)  An application for a writ of habeas corpus on behalf of a

person in custody pursuant to the
judgment of a State court shall not
be granted unless it appears that—

(A)  the applicant has exhausted
the remedies available in the
courts of the State; or

(B)(I)  there is an absence of available
State corrective process; or

(ii)  circumstances exist that render
such process ineffective to protect the
rights of the applicant.

28 U.S.C. § 2254(b)(1).

The United States Supreme Court has explained the

habeas exhaustion requirement as follows:

Because the exhaustion doctrine is
designed to give the state courts a
full and fair opportunity to
resolve federal constitutional
claims before those claims are
presented to the federal
courts . . . state prisoners must
give the state courts one full
opportunity to resolve any
constitutional issues by invoking
one complete round of the State's
established appellate review
process.

O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).  A state

prisoner must therefore "fairly present" the substance of each

federal constitutional claim to the state courts *before* seeking

federal habeas relief.  In Nebraska, "one complete round"

ordinarily means that each § 2254 claim must have been presented

in an appeal to the Nebraska Court of Appeals, and then in a

petition for further review to the Nebraska Supreme Court if the

Court of Appeals rules against the petitioner. *Akins v. Kenney,*
*410 F.3d 451, 454-55 (8th Cir. 2005)*.

Where "no state court remedy is available for the
unexhausted claim —- that is, if resort to the state courts would
be futile —- then the exhaustion requirement in § 2254(b) is
satisfied, but the failure to exhaust 'provides an independent
and adequate state-law ground for the conviction and sentence,
and thus prevents federal habeas corpus review of the defaulted
claim, unless the petitioner can demonstrate cause and prejudice
for the default.'" *Armstrong v. Iowa, 418 F.3d 924, 926 (8th*
*Cir. 2005)* (quoting *Gray v. Netherland, 518 U.S. 152, 162*
*(1996))*.  Stated another way, if a claim has not been presented
to the Nebraska appellate courts and is now barred from
presentation, the claim is procedurally defaulted, not
unexhausted. *Akins, 410 F.3d at 456 n. 1*.

Under Nebraska law, "[a]n appellate court will not
entertain a successive motion for postconviction relief unless
the motion affirmatively shows on its face that the basis relied
upon for relief was not available at the time the movant filed
the prior motion." *State v. Ortiz, 670 N.W.2d 788, 792 (Neb.*
*2003)*.  Furthermore, "[a] motion for postconviction relief cannot
be used to secure review of issues which were or could have been
litigated on direct appeal." *Hall v. State, 646 N.W.2d 572, 579*
*(Neb. 2002)*.

-6-

To excuse a procedural default, a petitioner must demonstrate either cause for the default and actual prejudice as a result of the alleged violation of federal law or, in rare cases, that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Although there is no precise definition of what constitutes cause and prejudice, "the existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Strickler v. Greene*, 527 U.S. 263, 283 n. 24 (1999); *see also Bell v. Attorney Gen. of State of Iowa*, 474 F.3d 558, 561 (8th Cir. 2007) ("A cause is sufficient to excuse procedural default when it is external to the petitioner, and not attributable to the petitioner.").

**B.    Claims One and Three**

Segura raises various federal due process arguments in Claims One and Three. All of the issues raised in Claims One and Three relate to matters that occurred at the time of Segura's plea and sentencing proceedings. Thus, Segura knew about these issues when he filed his direct appeal. Therefore, under Nebraska law, Segura was required to raise these issues on direct appeal. *See Hall*, 646 N.W.2d at 579 ("A motion for

postconviction relief cannot be used to secure review of issues which were or could have been litigated on direct appeal.").

Segura did not raise the issues presented in Claim One or Claim Three on direct appeal. Indeed, Segura did not raise any federal due process claims on direct appeal. Rather, he argued that he received an excessive sentence, and that the trial court abused its discretion when it failed to order a psychiatric evaluation under Neb. Rev. Stat. § 29-2261(5) (Filing No. 8-6 at CM/ECF p. 5; Filing No. 8-8 at CM/ECF p. 1). Segura did not fairly present Claim One or Claim Three to the Nebraska state courts. Therefore, these claims are procedurally defaulted.

Segura has not argued that there is cause to excuse the procedural default of these claims. Thus, Claims One and Three will be dismissed because they are procedurally defaulted, and Segura has not shown cause to excuse the procedural default.

### III. DISCUSSION OF CLAIM TWO

### A. Standard Under 28 U.S.C. § 2254(d)

When a state court has adjudicated a habeas petitioner's claim on the merits, there is a very limited and extremely deferential standard of review both as to the law and the facts. *See* 28 U.S.C. § 2254(d). Section 2254(d)(1) states that a federal court may grant a writ of habeas corpus if the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as

-8-

determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).  As explained by the Supreme Court in *Williams v. Taylor*, 529 U.S. 362 (2000), a state court acts contrary to clearly established federal law if it applies a legal rule that contradicts the Supreme Court's prior holdings or if it reaches a different result from one of that Court's cases despite confronting indistinguishable facts.  529 U.S. at 405-406. Further, "it is not enough for [the court] to conclude that, in [its] independent judgment, [it] would have applied federal law differently from the state court; the state court's application must have been objectively unreasonable." *Rousan v. Roper*, 436 F.3d 951, 956 (8th Cir. 2006).

With regard to the deference owed to factual findings of a state court's decision, Section 2254(d)(2) states that a federal court may grant a writ of habeas corpus if a state court proceeding "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  In addition, a federal court must presume that a factual determination made by the state court is correct, unless the petitioner "rebut[s] the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

As the Supreme Court noted, "[i]f this standard is difficult to meet, that is because it was meant to be."

-9-

*Harrington v. Richter*, 131 S. Ct. 770, 786 (2011). The deference due state court decisions "preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Id.* In short, "[i]t bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* However, this high degree of deference only applies where a claim has been adjudicated on the merits by the state court. *See Brown v. Luebbers*, 371 F.3d 458, 460 (8th Cir. 2004) ("[A]s the language of the statute makes clear, there is a condition precedent that must be satisfied before we can apply the deferential AEDPA standard to [the petitioner's] claim. The claim must have been 'adjudicated on the merits' in state court.").

The Eighth Circuit clarified what it means for a claim to be adjudicated on the merits, finding that:

> AEDPA's requirement that a petitioner's claim be adjudicated on the merits by a state court is not an entitlement to a well-articulated or even a correct decision by a state court. . . . Accordingly, the postconviction trial court's discussion of counsel's performance -- combined with its express determination that the ineffective-assistance claim as a whole lacked merit -- plainly suffices as an adjudication on the merits under AEDPA.

-10-

*Worthington v. Roper*, 631 F.3d 487, 496–97 (8th Cir. 2011)
(internal quotation marks and citations omitted).  The court also
determined that a federal court reviewing a habeas claim under
AEDPA must "look through" the state court opinions and "apply
AEDPA review to the 'last reasoned decision' of the state
courts." *Id.* at 497.  A district court should do "so regardless
of whether the affirmance was reasoned as to some issues or was a
summary denial of all claims." *Id.*  The Supreme Court agrees,
stating:

> There is no text in the statute
> requiring a statement of reasons.
> The statute refers only to a
> "decision," which resulted from an
> "adjudication."  As every Court of
> Appeals to consider the issue has
> recognized, determining whether a
> state court's decision resulted
> from an unreasonable legal or
> factual conclusion does not require
> that there be an opinion from the
> state court explaining the state
> court's reasoning.

*Harrington*, 131 S. Ct. at 784.

**B.   Claim Two, Parts (1), (2), and (4)**

In Claim Two, Segura argues he was denied the effective
assistance of trial counsel.  Claim Two is made up of four parts.
Parts (1), (2), and (4) are related, so the Court will discuss
them together.

Liberally construed, Segura argues in Parts (1), (2),
and (4) that his trial counsel was ineffective for failing to

-11-

pursue an insanity defense (*See* Filing Nos. 1 and 15).   In Parts
(1) and (2), Segura argues his trial counsel should have required
that Segura undergo full psychiatric testing (Filing No. 15 at
CM/ECF pp. 9-23).   In Part (4), Segura argues that trial counsel
should not have allowed Segura to enter into a plea agreement
before gaining access to discovery materials, as those materials
may have supported a finding that Segura was insane at the time
he committed the crime.   (*Id.*)  The Court will address Segura's
arguments under the two-pronged standard of *Strickland v.*
*Washington*, 466 U.S. 668 (1984).

> **1.   *Strickland* Standard**

        *Strickland* requires that the petitioner demonstrate
both that his counsel's performance was deficient, and that such
deficient performance prejudiced the petitioner's defense.   *Id.*
*at 687*.   The first prong of the *Strickland* test requires that the
petitioner demonstrate that his attorney failed to provide
reasonably effective assistance.   *Id. at 687-88*.   In conducting
such a review, the courts "indulge a strong presumption that
counsel's conduct falls within the wide range of reasonable
professional assistance."   *Id. at 689*.   The second prong requires
the petitioner to demonstrate "a reasonable probability that, but
for counsel's unprofessional errors, the result of the proceeding
would have been different."   *Id. at 694*.   A court need not
address the reasonableness of the attorney's skills and diligence

-12-

if the movant cannot prove prejudice under the second prong of
this test.  *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir.
1996).  Further, as set forth in *Strickland*, counsel's "strategic
choices made after thorough investigation of law and facts
relevant to plausible options are virtually unchallengeable" in a
later habeas corpus action.  *Strickland*, 466 U.S. at 690.

In addition, the Supreme Court has emphasized that the
deference due the state courts applies with vigor to decisions
involving ineffective assistance of counsel claims.  *Knowles v.
Mirzayance*, 556 U.S. 111 (2009).  In *Knowles*, the Justices
stressed that under the *Strickland* standard, the state courts
have a great deal of "latitude" and "leeway," which presents a
"substantially higher threshold" for a federal habeas petitioner
to overcome.  As stated in *Knowles*:

> The question is not whether a
> federal court believes the state
> court's determination under the
> *Strickland* standard as incorrect
> but whether that determination was
> unreasonable -- a substantially
> higher threshold. . . . And,
> because the *Strickland* standard is
> a general standard, a state court
> has even more latitude to
> reasonably determine that a
> defendant has not satisfied that
> standard.

*Id.* at 123 (internal quotation marks and citations omitted).

2.    **State Court Findings**

Segura argued in his post-conviction motion that his trial counsel was ineffective for failing to pursue an insanity defense (Filing No. 8-16 at CM/ECF pp. 49-78).  He also raised this argument on appeal to the Nebraska Court of Appeals, and in a petition for further review to the Nebraska Supreme Court (Filing No. 8-12 at CM/ECF pp. 1-22; Filing No. 8-14 at CM/ECF pp. 1-10).  In each instance, the Nebraska state courts rejected Segura's argument.  The Nebraska Court of Appeals did so in a detailed, well-reasoned order, which stated, in part:

> Segura claims that trial counsel failed to properly advise him of the availability and viability of the insanity defense.  The U.S. Supreme Court has stated: "[W]here the alleged error of counsel is a failure to advise the defendant of a potential affirmative defense to the crime charged, the resolution of the 'prejudice' inquiry will depend largely on whether the affirmative defense likely would have succeeded at trial."  *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)
> . . . .

In order to evaluate Segura's claim regarding the insanity defense, we first analyze whether the defense likely would have succeeded at trial.  Nebraska follows the M'Naghten rule as to the defense of insanity.  Under Nebraska's current common-law definition of insanity, the two requirements for the defense are (1) the defendant had a mental disease or defect at

-14-

the time of the crime and (2) the defendant did not know or
understand the nature and consequences of his or her actions or
he or she did not know the difference between right and wrong.
*State v. Hotz*, 281 Neb. 260, 795 N.W.2d 645 (2011).  A defendant
who pleads not responsible by reason of insanity has the burden
to prove the defense by a preponderance of the evidence.  *State
v. France*, 279 Neb. 49, 776 N.W.2d 510 (2009).  In the context of
an insanity defense, the fact that a defendant has some form of
mental illness or defect does not by itself establish insanity.
*State v. Ellis*, 281 Neb. 571, 799 N.W.2d 267 (2011).

        In his psychiatric evaluation, [Dr. David] Fisher
diagnosed Segura with amphetamine and psychostimulant dependence,
in remission; alcohol and cocaine dependence, in remission;
personality disorder, not otherwise specified; mood disorder, not
otherwise specified; and delusional disorder, persecuting type.
In Fisher's medical opinion, Segura understood "clearly the
nature and object of the charges and proceedings against him and
all of the potential consequences."  Segura was able to describe
the events before and subsequent to his arrest and incarceration.
Fisher indicated that Segura had a "basic or adequate awareness
of right and wrong, and therefore the wrongness of a person's
criminal actions, including his, although he [denied] guilt."

        Fisher verbally told Lockwood that his opinion was that
Segura understood the wrongful nature of his actions at the time

-15-

of the offense and did not meet the requirements of the insanity defense.  Fisher noted Segura's actions immediately after the incident demonstrated "a desire to avoid being caught or apprehended."  At that time, Lockwood asked Fisher not to provide a written report regarding the possible use of the insanity defense because there was an order of reciprocal discovery.  Lockwood did not want Fisher to become a State's witness if a second opinion was later obtained.  Lockwood testified that he would have asked Fisher for a written report had the results of the evaluation been favorable for an insanity defense.

Lockwood testified that he discussed the insanity defense and the relative merits of it with Segura.  They discussed what would need to be demonstrated and what responsive evidence would likely be presented by the State at trial to overcome the insanity defense.  During these discussions, Lockwood also communicated to Segura the verbal recommendation by Fisher that Segura did not meet the requirements of the insanity defense.  Lockwood outlined possible pleas and possible penalties to Segura "from day one."  Further, Lockwood testified in his deposition that he would have pursued the insanity defense had Segura insisted on going to trial.  Lockwood told Segura that the plea offer seemed like a "fair and reasonable deal" but left the final decision up to Segura.  Lockwood testified that Segura was not hesitant to plea and that it was his decision to accept the

-16-

offer by the State.  Lockwood indicated that Segura was "very interested" in avoiding having his parents and child "drug through a public court hearing."  As found by the district court, the evidence from the plea hearing indicated that Segura entered his plea of his own free will and understood his rights.

Issues of credibility are for the postconviction court. *State v. Poindexter*, 277 Neb. 936, 766 N.W.2d 391 (2009).  The district court found Lockwood's testimony credible.  Contrary to Segura's argument, Lockwood did pursue the insanity defense by withdrawing the not guilty plea and entering a not guilty by reason of insanity plea.  Lockwood discussed the possible insanity defense with Fisher, who advised Lockwood that the psychiatric evaluation did not support the defense.  Lockwood discussed the viability of the insanity defense with Segura and left the decision to Segura whether to proceed to trial using the insanity defense or plead to one charge.  It is clear from the record that Segura knowingly made the decision to accept the favorable plea rather than pursue the insanity defense.  Segura did not show that if he had been further advised regarding the insanity defense there was a reasonable probability he would have insisted on going to trial.  Self-serving declarations that he would have gone to trial are not enough; a defendant must present objective evidence showing a reasonable probability that he would

have insisted on going to trial.  *State v. Yos-Chiguil*, 281 Neb. 618, 798 N.W.2d 832 (2011).

We note that there are other relevant factors at play when evaluating prejudice in a claim of ineffective assistance of counsel regarding the entry of a guilty plea, including the benefit of the offered plea bargain and the potential penalties the defendant faced.  *State v. Yos-Chiguil*, *supra*.  Segura received a significant benefit from the plea agreement.  Segura entered a no contest plea to attempted first degree murder in exchange for the State's dismissing the other four counts in the information.  Had Segura been convicted of all five charges, he faced a possible 140 years' imprisonment.  By accepting the plea agreement, Segura's charges were reduced from five to one and the possible penalty was reduced to a maximum of 50 years imprisonment.  Given the favorable plea agreement and the facts against the use of the insanity defense, Segura has not shown that a rational defendant would have insisted on going to trial. *Roe v. Flores-Ortega*, 528 U.S. 470, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). . . .  Therefore, the district court did not err when it denied his postconviction claim. *Segura, 2011 WL 4635169, at *5-8*.

After the Nebraska Court of Appeals denied relief on this issue, Segura petitioned the Nebraska Supreme Court for

-18-

further review, which also denied relief (Filing No. 8-4 at
CM/ECF p. 2).

### 3.   Deference

The foregoing findings of fact and conclusions of law
are entitled to deference under the statutory standard of review
that applies to factual and legal conclusions reached by the
state courts.  The Nebraska Court of Appeals reviewed all of the
evidence and determined, based on *Strickland* and other federal
and state law, that Segura's trial counsel's performance did not
prejudice him.  The Court agrees that it is clear from the record
that Segura knowingly made the decision to accept the favorable
plea rather than pursue the insanity defense.  (*See* plea colloquy
at Filing No. 8-20 at CM/ECF pp. 69-85.)  In addition, Segura did
not show that a rational defendant would have insisted on going
to trial where, if he had gone to trial, he would have faced an
additional four charges and a possible 140 years imprisonment.

The Court has carefully reviewed the record and finds
that the Nebraska state court decisions are not "based on an
unreasonable determination of the facts in light of the evidence
presented in the State court proceeding."  28 U.S.C. §
2254(d)(2).  Segura has not submitted any evidence, let alone
clear and convincing evidence, that the Nebraska state courts
were incorrect in any of the factual determinations.  28 U.S.C. §
2254(e)(1).  The grant of a writ of habeas corpus is not

warranted on this issue because the Nebraska state courts correctly applied *Strickland* and other federal law.

**C.   Claim Two, Part (3)**

Segura argues in Claim Two, Part (3), that his trial counsel was ineffective because he coerced him into entering into a plea agreement.  Specifically, Segura argues trial counsel informed him that his parents would be forced to testify at trial, and if they refused, they would be held in contempt of court (Filing No. 1 at CM/ECF pp. 8-9).  Again, the Court must address Segura's argument under the two-pronged standard of *Strickland* described above.

Segura raised this argument in his post-conviction motion to the state district court, in his brief on interlocutory appeal to the Nebraska Court of Appeals, and in his petition for further review to the Nebraska Supreme Court (Filing No. 8-9 at CM/ECF p. 18; Filing No. 8-11 at CM/ECF pp. 10-11; and Filing No. 8-16 at CM/ECF p. 52).  In each instance, the Nebraska state courts rejected Segura's argument.  The state district court briefly addressed the argument in its ordering denying an evidentiary hearing on the issue:

> The defendant here claims his attorney threatened and coerced him with regard to his entry of plea, by telling him his parents would have to testify in a trial.  This is not grounds for a[n] [evidentiary] hearing as the attorney is making an appropriate

-20-

> statement to the defendant as to
> the setting of a trial in the case.

(Filing No. 8-16 at CM/ECF p. 86.)

The Court agrees with the state district court that Segura's argument lacks merit. Segura's trial counsel's statements merely informed Segura of what could happen if his case went to trial. Moreover, the record reflects that the state district court questioned Segura extensively as to whether he had been coerced into entering his plea, and then asked him additional questions to ensure he affirmed and acknowledged his plea was a direct result of his plea bargain (*Id.* at CM/ECF pp. 70-72). Following this extensive questioning by the state district court, the court found that Segura had knowingly, intelligently, and voluntarily entered his plea of no contest (*Id.* at CM/ECF p. 84). The Nebraska Court of Appeals did not address Segura's coercion argument in a written opinion. However, as discussed at length above, it did determine that Segura had "entered his plea of his own free will and understood his rights." *Segura*, 2011 WL 4635169, at *6.

Segura has not argued that the Nebraska state courts' denial of relief on this issue resulted in an unreasonable application of law or was based on an unreasonable determination of the facts. In addition, he has not argued, let alone established, there is a reasonable probability that, but for

-21-

counsel's alleged error, he would have insisted on going to trial. Accordingly, the Court will deny relief on this claim.

## IV. CERTIFICATE OF APPEALABILITY

A petitioner cannot appeal an adverse ruling on his petition for writ of habeas corpus under § 2254 unless he is granted a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1). A certificate of appealability cannot be granted unless the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make such a showing, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. Daniel*, 529 U.S. 473, 484 (2000).

In this case, Segura has failed to make a substantial showing of the denial of a constitutional right. The Court is not persuaded that the issues raised in the Petition are debatable among reasonable jurists, that a court could resolve the issues differently, or that the issues deserve further proceedings. Accordingly, the Court will not issue a certificate

of appealability in this case.  A separate order will be entered
in accordance with this memorandum opinion.

      DATED this 4th day of February, 2013.

           BY THE COURT:

           /s/ Lyle E. Strom

           _____
           LYLE E. STROM, Senior Judge
           United States District Court

---

      * This opinion may contain hyperlinks to other documents or
Web sites.  The U.S. District Court for the District of Nebraska
does not endorse, recommend, approve, or guarantee any third
parties or the services or products they provide on their Web
sites.  Likewise, the Court has no agreements with any of these
third parties or their Web sites.  The Court accepts no
responsibility for the availability or functionality of any
hyperlink.  Thus, the fact that a hyperlink ceases to work or
directs the user to some other site does not affect the opinion
of the Court.